**Robert Louis ELKINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 64080.**

Court of Criminal Appeals of Texas, En Banc.

March 30, 1983.

Donald B. Friedman, Texarkana, for appellant.

Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

CLINTON, Judge.

Appeal is taken from a conviction for aggravated robbery in which the jury assessed the punishment at 99 years confinement.

The State swiftly and easily established appellant entered an E–Z Mart grocery in Texarkana on January 10, 1979, just past midnight; after diverting the attention of the lone attendant, Cathy Denton, by asking for a pack of "Cools [sic];" he proceeded to relieve her of all the money contained in the cash register—some $130.00—at gunpoint and, after instructing Denton to lie on the floor, fled, apparently on foot. At trial, Denton positively identified appellant as the robber. She also identified a red cap, a jacket and a pistol that were recovered from a car in which appellant was a passenger.

Appellant now contends the trial court erred in admitting into evidence testimony and exhibits establishing an extraneous transaction that constituted a criminal offense, which occurred two days after the offense for which he was on trial.

Indeed, the record reflects that after Cathy Denton testified and withstood inconsequential crossexamination,[1] the State devoted the remainder of the trial to the establishing appellant's commission of a similar robbery in a 7–11 grocery two days later in Texarkana. This was accomplished through the testimony of four law enforcement officers involved in appellant's arrest minutes after the extraneous robbery occurred, a property room sergeant and, finally, the victim of the extraneous offense. With this, the State rested its case in chief. Appellant likewise rested.

---

1. Appellant's crossexamination of Denton comprises all of two pages of the trial transcription. Defense counsel's "attack" on Denton's identification of appellant consisted of the following:

"Q: Have you ever gotten two black men confused before?
A: Only when they were brothers.
Q: Only when they were brothers, but you have gotten them confused?
A: Yes, Sir.
Q: Even there in the store?
A: Well, they were twins.
Q: All right. But, have you ever gotten two black men confused before?
A: Not that I can recall.

Q: Okay. Now, I believe you told [the prosecutor] that Robert Elkins asked for a package of Cool [sic] cigarettes.
A: Yes, Sir.
Q: Did you know, or are you aware, that he does not smoke and has never smoked in his life?
A: No, Sir.
     *     *     *     *     *     *
Q: Okay. Did any police officer ever tell you that another black male by the name of David Cornell Johnson was charged with this robbery?
A: No, Sir."

The trial court instructed the jury that the testimony regarding "offenses other than the offense alleged against him in the indictment" could be considered only "in determining the identity or the intent of the Defendant in connection with the offense charged against him and for no other purpose."

In effect, it is appellant's contention that the evidence concerning the extraneous robbery was not probative of any contested issue in this direct evidence case and, therefore, interjecting it into the case over his repeated objection[2] served no purpose other than to distract the jury and taint their deliberations.

■ It is an established generic principle of evidence that proof of prior specific acts of misconduct, similar happenings or extraneous transactions committed by a party is not probative of the contested material issues in the case on trial, and therefore inadmissible. See generally *Sanders v. State,* 604 S.W.2d 108 (Tex.Cr.App.1980); *Murphy v. State,* 587 S.W.2d 718 (Tex.Cr. App.1979) and cases cited there. In a criminal proceeding, when the State seeks admission of an extraneous or similar transaction committed by the accused which constitutes a separate criminal offense, introduction of that "extraneous offense" transaction is inherently prejudicial, since the accused has no notice he will be called to defend against it, and his "propensity to commit crimes" is not material to whether he is guilty of the specified conduct which is charged by the State. *Bates v. State,* 643 S.W.2d 939, 944 (Tex.Cr.App.1982); *Rubio v. State,* 607 S.W.2d 498 (Tex.Cr.App.1980); *Sanders,* supra; *Murphy,* supra, and cases cited there.

But, as was observed in *Rubio,* supra, at 506 (Concurring Opinion):

"[T]hese evidentiary principles, as most, must in some circumstances give way. For extraneous transactions constituting offenses shown to have been committed by the accused[3] may become admissible upon a showing by the prosecution both that the transaction is *relevant* to a *material* issue in the case; and, the relevancy value of the evidence outweighs its inflammatory or prejudicial potential.

In determining this evidentiary balance in a case established by direct evidence[4] the court must consider whether the material issue to which the extraneous conduct is relevant is *contested,* and, if so, in looking to the attributes of the extraneous offense as shown by the State, determine whether its admission would be of *assistance to the jury* in resolving the contested issue before it." [emphasis original] [citations and footnotes omitted]

The State, represented in this Court by the Office of the State Prosecuting Attorney through an untimely brief, contends the material issue of which the extraneous conduct was probative, is "identity" of the perpetrator.

■ It is true that the "identity" of the actor is one of the material issues which is raised by the State's pleading an offense in any indictment. See *Murphy,* supra. But in meeting its burden to prove the material issue of "identity," the State chose to elicit a direct, positive identification of appellant by the complaining witness which stood in no way impeached or even weakened by the "manner" of crossexamination. Compare *Walker v. State,* 588 S.W.2d 920 (Tex.Cr. App.1979).

---

2. Appellant lodged timely specific objections on the ground urged here, to the testimony of each extraneous offense witness.

3. It is always required that the commission of the extraneous offense is clearly proved and the accused is shown to have been its perpetrator. *Sanders,* supra; *Carrillo v. State,* 591 S.W.2d 876 (Tex.Cr.App.1979); *Ransom v. State,* 503 S.W.2d 810 (Tex.Cr.App.1974); see also 23 T.J.2d Evidence § 195 (1961).

4. When the case is one of circumstantial evidence, a different process applies in determining admissibility. See *Mulchahey v. State,* 574 S.W.2d 112 (Tex.Cr.App.1978); *Etchiesen v. State,* 574 S.W.2d 753 (Tex.Cr.App.1978); *Jones v. State,* 568 S.W.2d 847 (Tex.Cr.App. 1978).

A statement in *Caldwell v. State,* 477 S.W.2d 877, 879 (Tex.Cr.App.1972) is particularly appropriate:

"To hold that the cross-examination of this [complainant] would permit the introduction of an extraneous offense would be tantamount to holding that such testimony would be admissible in any case where a defendant's counsel exercises the constitutional right of cross-examination. This is not and should not be the law."

See also *Redd v. State,* 522 S.W.2d 890 (Tex.Cr.App.1975); and *Rogers v. State,* 484 S.W.2d 708 (Tex.Cr.App.1972). Thus, the issue was utterly uncontested at the time the State instituted its barrage of evidence regarding the extraneous offense.

The State Prosecuting Attorney contends, however, that appellant's crossexamination of Denton, coupled with his "attempts" to lead the jury to believe that a person arrested with him—David Johnson—could have been the robber, rendered the questioned evidence admissible.

We are not prepared to hold the State's error was "cured" by appellant's "attempts" regarding Johnson when they were on crossexamination of the State's five extraneous offense witnesses: without the direct testimony of these witnesses elicited by the State, the jury would have been totally unaware of Johnson's actual existence. Since the State insisted on proving appellant and Johnson were arrested together immediately after the extraneous robbery, and found in possession of stolen money and clothing worn during the robberies, it is clear that the State interjected whatever real basis there may have been for the jury's speculation that someone other than appellant was guilty. Compare *Todd v. State,* 598 S.W.2d 286 (Tex.Cr.App.1979).

The record as a whole reflects the issue of his "identity" was not contested by appellant so as to render extraneous offense evidence more probative than prejudicial. Compare *Hickombottom v. State,* 486 S.W.2d 951 (Tex.Cr.App.1972); and *Redd,* supra, with *Walker,* supra, and *Todd,* supra. We hold evidence of the extraneous offense was patently more prejudicial than of assistance to the factfinders in resolving the issue of "identity."

The State, however, advances another justification for its admission: "there was no intelligent way to present the arrest and seizure without going into the [extraneous] 7–11 robbery." In fact, the State claims that the two robberies committed two days apart and the arrest and the search of David Johnson's automobile were so closely interwoven that to present the primary offense without evidence of the other events would have "compelled the jury to work in a state of confusion—if not a vacuum." For this proposition, the State cites no authority and we hazard there is none.

While we agree it was important for the State to prove appellant had been found in possession of a red toboggan hat, a pistol and a brown coat, which were later identified by Cathy Denton, the details of the arrest and the extraneous offense leading to it, were wholly unnecessary to such showings. *Gaston v. State,* 574 S.W.2d 120 (Tex.Cr.App.1978).

Indeed, it appears that if the jury worked in a state of confusion, it was due to the State's devotion of five times the witnesses and testimony to the extraneous offense, as to the primary offense.[5] Even the prosecutor was aware of the problem. During his opening argument on guilt he stated:

"I hope you're not confused, that we didn't confuse you about these two offenses. The robbery you're considering today on guilt or innocence at this time is the one that happened out at the E–Z Way Store that Miss Denton—Mrs. Denton, the first witness, told you about." [6]

---

**5.** Cathy Denton's testimony comprises 20 pages of the trial transcript. The remainder—100 pages—consists of the testimony of the five extraneous offense witnesses.

**6.** The prosecutor continued:

"She was employed out there; she heard the bell ring, a man came in; he had a cap on. This cap right here (indicating). She identified it for you. *No question about it; this was it.* He was wearing this jacket (indicating). *No question about it; that's what he*

■ Under this record, we cannot say there is no reasonable likelihood that introduction of the evidence condemned contributed to appellant's conviction or 99 year sentence. Because of our disposition of appellant's second ground of error, we pretermit discussion of the others.[7]

The judgment of conviction is reversed and the cause remanded.

CAMPBELL, J., dissents.

was wearing. He came in and he asked for a package of Cool [sic] cigarettes. Smoke, or not smoke, it doesn't make any difference. She had to turn around, remember? She had to turn her back to Elkins in order to get the Cool [sic] cigarettes. But, when she turned back around, what was facing her? A thirty-eight caliber pistol pointed right at her. * * She gave him the money, she laid down and in a sufficient period of time, she called the police and reported the robbery. Okay? The next thing we know—'course, Elkins is gone then. *There wasn't any question; she identified him. Pointed him out to you.* Said, 'There he is right there, sitting in the Courtroom now.' The next thing we know, two days later, he's not satisfied with having taken that money. He wants to go ahead and, you know—*he's the kind of guy that's not going to work for a living; he's going to come out and hijack.* He's going to take somebody else's money. A couple of days later, hey, we catch him over on the north side of town, now, leaving the scene of another robbery, just reported. There he is in the car, and lo-and-behold, on him, what do we find? We find that pistol, identified by Mrs. Denton saying, 'Hey, *that's the one he used on me two days before.*' He had just pulled another hijacking. Well, he got caught. He got caught. And, that's why he's down here now for you folks to determine his guilt or innocence." [Emphasis added]

7. For the benefit of the State upon a retrial, we observe appellant's first ground of error also presents reversible error. He there complains of the prosecutor's closing argument on punishment:

"*No remorse,* nothing whatsoever. *He didn't show you anything.*" [Emphasis added]
This direct comment on appellant's failure to testify is a far cry from what were construed as indirect comments in *McMahon,* 582 S.W.2d 786 (Tex.Cr.App.1978); and *Clark v. State,* 362 S.W.2d 647 (Tex.Cr.App.1962), primarily relied upon by the State. On the matter of remorse or contrition, see generally *Thomas v. State,* 638 S.W.2d 481 (Tex.Cr.App.1982).