**Julius Johnny CASEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–84–811–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

April 10, 1986.

would be unnecessary.

Walter C. Prentice, Austin, Janet C. Morrow, Morrow & Burnett, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Eleanor M. McCarthy, Harris County Asst. Dist. Atty., Houston, for appellee.

Before SAM BASS, COHEN and HOYT, JJ.

## OPINION

HOYT, Justice.

Appellant appeals from a jury trial in which he was convicted of aggravated robbery. Tex.Pen.Code Ann. sec. 29.03 (Vernon 1974). The jury assessed punishment, enhanced by two prior felony convictions pursuant to Tex.Pen.Code Ann. sec. 12.-42(d) (Vernon Supp.1986), at 55 years confinement. We reverse and remand.

An armed group of at least four males robbed the Southwestern Drug Corporation warehouse in Houston of significant wholesale quantities of narcotics on January 11, 1983. One of the robbers was wearing a bandana-type cloth across his face as a mask. During the course of the robbery, the face of one of the robbers was revealed, and he was later identified as the appellant.

An indictment alleging aggravated robbery and containing enhancement allega-

tions was returned on February 17, 1985, and an arrest warrant was issued. Appellant was arrested on January 18, 1984, nearly a year later.

Appellant now brings five grounds of error, none of which challenges the sufficiency of the evidence.

In the first ground of error, appellant contends that the evidence is insufficient to prove that the second previous felony conviction was for an offense committed after the first previous felony conviction became final.

Tex.Pen.Code Ann. sec. 12.42(d) provides as follows:

> (d) If it be shown on the trial of any felony offense that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by confinement in the Texas Department of Corrections for life, or for any term of not more than 99 years or less than 25 years.

The enhancement paragraph of the indictment reads as follows:

> Before the commission of the offense alleged above (hereafter styled the primary offense), on December 2, 1965, in Cause No. 117995 in the Criminal District Court No. 3 of Harris County, Texas, the Defendant was convicted of the felony of Burglary. Before the commission of the primary offense, and after the conviction in Cause No. 117995 was final, the Defendant committed the felony of Burglary with intent to commit theft, subsequent offender and was convicted on June 4, 1973, in Cause No. 11,154 in the 75th JUDICIAL DISTRICT court of Liberty County, Texas.

■ At the punishment phase of the trial, the State introduced into evidence the judgment and sentence for each of the two prior felony convictions alleged in the indictment. The judgment in the first packet was entered in April 1973. However, the second packet containing a Liberty County conviction was admitted, but no evidence was admitted proving when that offense was committed.

Because there is no proof that the second previous offense was committed after the first previous offense became final, the appellant contends that the judgment should be reversed and the cause remanded for a new trial without the use of the second prior conviction alleged for enhancement. The State urges this Court to reform the sentence if we find the evidence of the second enhancement paragraph to be insufficient. The State contends that the verdict should be reformed to reflect a sentence of 15 years, the minimum punishment that could be given to a repeat offender upon retrial in compliance with Tex.Code Crim.P. Ann. art. 37.10 (Vernon Supp.1986). That statute has been amended as follows:

> (b) If the jury assesses punishment in a case and in the verdict assesses both punishment that is authorized by law for the offense and punishment that is not authorized by law for the offense, the court shall reform the verdict to show the punishment authorized by law and to omit the punishment not authorized by law. If the trial court is required to reform a verdict under this subsection and fails to do so, the appellate court shall reform the verdict as provided by this subsection.

This statute controls litigation from its effective date (June 11, 1985) and applies to both pending and future actions. *Ex parte Johnson,* 697 S.W.2d 605 (Tex.Crim.App. 1985). The cases decided since art. 37.10 was amended have involved questions of assessed punishment that included unauthorized fines in addition to imprisonment. *See Ex parte Youngblood,* 698 S.W.2d 671 (Tex.Crim.App.1985); *Ex parte Johnson,* 697 S.W.2d 605. The issue before us is not whether a portion of the punishment is unauthorized by law, but whether, after admitting two previous judgments for punishment enhancement purposes, the trial court's instructions on the range of punishment are fatal because the State failed to prove the proper time sequence of the second previous convictions. We hold that it

is. Although it is abundantly clear that the jury's assessed punishment was within the proper range whether one or two previous convictions were used, it is equally clear that the evidence is insufficient to prove that the second previous offense occurred after a conviction on the first previous offense. *Williams v. State,* 596 S.W.2d 903 (Tex.Crim.App.1980), is dispositive of this issue.

Ground of error one is sustained.

In ground of error two, the appellant complains that the trial court erred in refusing to set aside the indictment for a violation of the Speedy Trial Act. The indictment against the appellant was returned on February 17, 1983. He was not arrested until January 18, 1984. Appellant filed a motion for dismissal for lack of prosecution on July 23, 1984.

A written motion asserting the right to a speedy trial may seek relief under either the Sixth Amendment to the United States Constitution, Tex.Code Crim.P.Ann. art. 32A.02 (Vernon Supp.1986), or both. If art. 32A.02 is not expressly invoked, however, the appellant waives his statutory right to a speedy trial. *Turner v. State,* 662 S.W.2d 357, 358 (Tex.Crim.App.1984).

■ Appellant's motion sought relief only pursuant to his Sixth Amendment rights although all testimony was pursuant to his statutory right. On appeal, the Sixth Amendment right is not raised, and no motion is contained in the record alleging statutory violations. Because appellant's motion sought relief only under the Sixth Amendment, it did not comply with the state statutory requirements, and his rights under art. 32A.02 were waived. On appeal the Sixth Amendment claim for a speedy trial was not urged; it is also waived.

Ground of error two is overruled.

Grounds of error three and four center on an eyewitness identification of appellant. The appellant first alleges that his right to counsel was violated because no counsel was present at the lineup. The record fails to show whether counsel had been appointed at the time of the lineup.

■ Our state courts have adopted the United States Supreme Court's holding that a post-indictment pretrial identification process in the absence of counsel violates the Sixth Amendment. *Martinez v. State,* 437 S.W.2d 842 (Tex.Crim.App.1969). The record does not reflect whether the appellant had counsel present during the lineup or not. Appellant's motion to suppress the identification did not speak to this fact, and the evidence adduced at the hearing is insufficient and inconclusive. Because the evidence is inconclusive as to whether counsel was present, the ruling of the trial court is sustained.

■ Appellant further contends that Robert Reed's identification of him should have been suppressed because it was based on an impermissibly suggestive pretrial identification. Appellant contends that the evidence is *insufficient* to show both that the photographic display was not impermissibly suggestive and that it would not give rise to a substantial likelihood of misidentification. Appellant has misstated the burden. The evidence must be *sufficient* to show that the in-court identification was not tainted by improper pretrial identification procedures. Although not clearly so stating, appellant appears to be contending that the origin of the in-court identification is in a photo spread and a lineup.

A pretrial photographic identification does not automatically taint an in-court identification. *Ward v. State,* 474 S.W.2d 471, 475 (Tex.Crim.App.1971). If the in-court identification is not of independent origin, then it must be determined if the photographic display was impermissibly suggestive and if it would give rise to a very substantial likelihood of irreparable misidentification. *See Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). The following factors are to be considered when determining the origin of an in-court identification:

(1) the prior opportunity to observe the alleged criminal act;

(2) the existence of any discrepancy between any pre-lineup identification and the defendant's actual description;

(3) any identification of another person prior to the lineup;

(4) the identification by picture of the defendant prior to the lineup;

(5) failure to identify the defendant on prior occasions; and

(6) the lapse of time between the alleged act and the lineup identification.

*Garcia v. State,* 563 S.W.2d 925, 928 (Tex. Crim.App.1978).

Appellant was the only person Reed identified prior to trial. Reed identified appellant in a photo spread in January 1984, and again on the following day at the lineup; he never identified anyone else. Reed positively identified appellant each time he had the opportunity. There was no evidence at trial concerning the existence of any discrepancy between the pre-lineup description and appellant's actual description. There was a lapse of approximately one year between the alleged act and the lineup identification. The Court of Criminal Appeals has found where in-court identification is challenged, the ultimate factor is "how independent a witness' ability to reconstruct an accurate image of the criminal wrongdoer may be...." *Jackson v. State,* 628 S.W.2d 446, 448 (Tex.Crim.App.1982). The court has further held as follows:

> even where the pre-trial identification procedure is impermissibly suggestive, in-court testimony of an identification witness will still be admissible as long as the record clearly reveals that the witness' prior observation of the accused was sufficient to serve as an independent origin for the in-court identification.

*Jackson v. State,* 657 S.W.2d 123, 130 (Tex. Crim.App.1983).

The record in the instant case reveals that Reed was able to observe the appellant face-to-face at a distance of one foot when appellant's mask fell during the robbery. Reed further testified that he recalled appellant's complexion to be of such a distinguishing character that he could recognize the appellant upon seeing him again. Reed also testified that his in-court identification was based on his recollection from the robbery and not from the photo spread or the lineup.

Considering the in-court identification, Reed's identification of appellant was independent of any pretrial identification procedure.

Grounds of error three and four are overruled.

■ In the final ground of error, appellant contends that the trial court erred in admitting, over timely objection, evidence of an extraneous offense. The extraneous offense was the attempted robbery of another drug warehouse in which appellant participated about two months prior to the offense in the instant case.

Appellant's argument is that an accused should not be tried for some collateral crime or for being a criminal generally. *See Elkins v. State,* 647 S.W.2d 663, 665 (Tex.Crim.App.1983); *Albrecht v. State,* 486 S.W.2d 97, 100 (Tex.Crim.App.1972). The State responds by arguing that an exception to the general rule of inadmissibility of extraneous offenses exists in this case. An extraneous offense may become admissible if the defendant raises the issue of identity. *Moore v. State,* 700 S.W.2d 193, 199 (Tex.Crim.App.1985). Where a defendant presents the defense of alibi, he raises the issue of his identity. *Id.*

In the instant case, the appellant presented an alibi witness who testified that appellant was in Wisconsin when the offense was committed. The State then presented two witnesses who testified about a similar plan to rob a different drug warehouse. One of the participants in that plan testified that he, appellant, and two other men went to the manager's home instead of directly to the drug warehouse. The appellant held a gun on the manager while the other participants tied up the manager's family. After the manager convinced them that he could not get into the warehouse, the group stole his truck to escape. The group had police scanners and wore masks. The manager of the warehouse testified to the same facts.

In his brief, appellant anticipates the State's reply and argues that placing identity in issue was insufficient to allow the State to present evidence of the extraneous offense. As support for this argument, appellant cites *Elkins*, 647 S.W.2d 663; *Prior v. State*, 647 S.W.2d 956 (Tex.Crim. App.1983); *Hines v. State*, 646 S.W.2d 469 (Tex.App.—Houston [1st Dist.] 1982, pet. ref'd).

In *Hines*, the appellant was stopped in a stolen vehicle after a high speed chase, approximately three months after robbing a jewelry store. In his trial for the robbery, evidence of the chase in the stolen vehicle was admitted. This Court found that the evidence should have been admitted only if it constituted some evidence of appellant's guilt in the robbery. Unlike the case before us, there were no similarities between the offenses. The judgment was reversed and the cause remanded, because the evidence showed only that the appellant was fleeing due to being in a stolen vehicle and not due to his guilt of an aggravated robbery. *Hines*, 646 S.W.2d at 471.

In *Prior*, the court gave a limiting instruction on the extraneous offenses, limiting their use to determine intent or knowledge of the appellant. There was error, however, in admitting the extraneous offenses, because the elements of the offense charged were clearly proven and undisputed prior to the introduction of the extraneous offenses. *Prior*, 647 S.W.2d at 959. Further, unlike the instant case, no defense was offered, and there was no cross-examination relating to the testimony. The judgment was not reversed, however, because there was not a reasonable probability that the evidence might have contributed to the conviction. *Id.* at 959–60.

The Court of Criminal Appeals found in *Elkins* that extraneous offenses clearly proved and shown to have been committed by the accused may become admissible if the prosecution shows that the offense is *relevant* to a *material* issue in the case and that the relevancy of the evidence outweighs its inflammatory or prejudicial potential. *Elkins*, 467 S.W.2d at 665.

Even where appellant raises the issue of his identification through the defense of alibi, the extraneous offense does not automatically become admissible evidence. *Moore*, 700 S.W.2d at 199. Only if there is some distinguishing characteristic or characteristics common to both the primary offense and the extraneous offense will the extraneous offense become admissible. *Id.* at 201. The trial judge instructed the jury that the extraneous offense could only be considered on the issue of identification. *Id.*

Appellant's identity was the material issue in the instant case to which the extraneous offense was relevant. The common characteristics between the two offenses were multiple robberies using guns, police scanners, and masks; obtaining highly regulated drugs from pharmaceutical warehouses, and theft of the victim's automobile. The court gave a limiting instruction designed to lessen the prejudicial effect.

The fifth ground of error is overruled.

The judgment is reversed and the cause remanded for a new trial, and the State is barred from alleging more than one prior conviction upon retrial. *Ex Parte Bullard*, 679 S.W.2d 12, 14 (Tex.Crim.App.1984).

COHEN, J., dissents.

COHEN, Justice, dissenting.

I agree that the first ground of error must be sustained and some relief granted, because the State failed to prove that the second enhancement conviction was committed after the first enhancement conviction was final. *See* Tex.Penal Code Ann. sec. 12.42(d) (Vernon Supp.1986). The jury was wrongly instructed that the punishment range was 25 years to life imprisonment, when the proper range under these facts would have been 15 years to life. However, I would not grant appellant a new trial.

Appellant's only conceivable harm is that the jury was not allowed to consider the range of punishment between 15 and 25 years. He never objected on this basis in the trial court. Furthermore, he does not

contend that this error harmed him at the guilt stage. Because the only possible harm occurred at the punishment stage, a new trial would be a windfall for appellant. Such a result is unfair to the State, because it gives appellant more relief than is necessary to cure the harm he suffered. In my opinion, we should avoid this undesirable result unless it is plainly required by statute, judicial decision, or constitutional law.

*Williams v. State,* 596 S.W.2d 903 (Tex. Crim.App.1980), relied on by the majority, does not compel a new trial, because *Williams,* like many similar cases, did not construe Tex.Code Crim.Pro.Ann. art. 37.10(b) (Vernon Supp.1986), which became effective June 11, 1985 and applies to this case. *Ex parte Johnson,* 697 S.W.2d 605 (Tex. Crim.App.1985). Article 37.10(b) has so far been invoked only to strike unauthorized fines that juries assessed in addition to authorized periods of imprisonment. *See Ex parte Youngblood,* 698 S.W.2d 671 (Tex.Crim.App.1985); *Ex parte Johnson,* 697 S.W.2d 605 (Tex.Crim.App.1985). This does not mean, however, that it cannot apply to other situations. I would apply art. 37.10(b) in accordance with its mandatory language requiring that the trial court "*shall* reform the verdict to show the punishment authorized by law and to omit the punishment not authorized by law," and "[i]f the trial court is *required* to reform a verdict ... and fails to do so, the appellate court *shall* reform the verdict...." (emphasis supplied)

The majority agrees that appellant was properly convicted of a first degree felony and that the State properly proved a prior felony conviction alleged for enhancement. Therefore, the minimum punishment that appellant could have received under a correct jury charge was 15 years imprisonment, pursuant to Tex.Penal Code Ann. sec. 12.42(c) (Vernon 1974). The State contends that art. 37.10(b) gives us authority to reform the verdict by striking the punishment not authorized by law, that is, all punishment above the minimum 15 years required by sec. 12.42(c). It asks that we reform the sentence to 15 years, rather than grant a new trial.

I would accept the State's invitation, follow the requirement of art. 37.10(b), and reform the judgment to reflect a sentence of 15 years. This result has several advantages. It follows the legislative command; it is fair to appellant, because it cures all the harm he could have suffered; it is fair to the State, because it does not grant the excessive, unnecessary relief of a new trial; it conserves scarce judicial resources.

Article 37.10(b) was not enacted in a vacuum. It was a prompt, specific legislative response to *Bogany v. State,* 661 S.W.2d 957 (Tex.Crim.App.1983), which reversed our decision in *Bogany v. State,* 646 S.W.2d 663 (Tex.App.—Houston [1st Dist.] 1983). Texas Supreme Court Chief Justice John Hill, in his speech to a joint session of the legislature in January of 1985 concerning the state of the judiciary, discussed the Court of Criminal Appeals opinion in *Bogany* and requested that the legislature enact a statute like art. 37.10(b), in order to avoid an entirely new trial on guilt whenever a jury assessed an unauthorized punishment. The legislature responded admirable by passing art. 37.10(b).

The Court of Criminal Appeals, in turn, has broadly construed art. 37.10(b) in *Ex parte Johnson,* 697 S.W.2d 605, where it was used to reform a jury verdict rendered in 1980, five years before the effective date of the article. *Id.* at 609 (Onion, P.J., dissenting). This result was reached in *Johnson* despite three vigorous dissenting opinions, two of which attacked the statute's retroactive application to reform a judgment that was final before it was enacted. If art. 37.10(b) sweeps that broadly, it surely allows this judgment to be reformed to 15 years.