**Fredrick Laverne RIDGELY, Appellant,**

**v.**

**The STATE of Texas, State.**

**No. 2-87-268-CR.**

Court of Appeals of Texas,
Fort Worth.

Aug. 31, 1988.

Donald R. Scoggins, Dallas, for appellant.

Jerry Cobb, Criminal Dist. Atty., Gwinda Burns and Ron Wilson, Asst. Dist. Attys., Denton, for State.

Before FENDER, C.J., and BURDOCK, J., and W.A. HUGHES, Jr., J. (Retired, Sitting by Assignment).

## OPINION

FENDER, Chief Justice.

Appellant, Fredrick Laverne Ridgely, was convicted by a jury of murder. *See* TEX.PENAL CODE ANN. sec. 19.02 (Vernon 1974). The jury assessed punishment at ninety-nine years confinement in the Texas Department of Corrections.

We reverse and remand.

On September 4, 1986, appellant was indicted for the murder of his wife. The indictment alleged, in relevant part, that appellant, "did then and there knowingly and intentionally cause the death of an individual, Vikki Lynn Ridgely, by strangling her."

■ Under point of error one, appellant argues the trial court committed reversible error in denying his motion to quash the indictment for failure to allege the manner and means by which the victim was strangled. We agree.

The testimony of Dr. Chai Choi, the medical examiner, indicated that the victim died from mechanical asphyxiation which could have occurred in several different ways. Her death could have occurred by either smothering, such as holding something over her face or stuffing something down her throat, by manual strangulation, or a combination of both. Furthermore, the medical examiner testified that "strangulation has two categories, which is strangulation by ligature or strangulation by manual compression." The medical examiner concluded he did not know the exact mechanism which caused the victim's death.

It is well-settled that an indictment for murder should set forth the means, instrument, or weapon used; or if not known, that fact must be stated. *Garrett v. State*, 682 S.W.2d 301, 308 (Tex.Crim.App.1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1876, 85 L.Ed.2d 168 (1985). If a word or term in the indictment goes to an act or omission of the defendant, and the defendant files a motion to quash, the word or term must be further clarified by the State. *Coleman v. State*, 643 S.W.2d 124, 125 (Tex.Crim.App. 1982). The lack of notice of acts or omissions is by definition a denial of fair notice to an accused. *Gorman v. State*, 634 S.W. 2d 681, 684 (Tex.Crim.App. [Panel Op.] 1982) (opinion on reh'g).

Turning to the case at bar, the testimony of the medical examiner established a situation in which death could have resulted from numerous means. As previously stated, death could have been induced by strangulation, i.e., choking with his hands, by ligature, by suffocation with a paper towel or any combination thereof. We conclude that the allegation of the word "strangulation" in the indictment is an act which could have been committed through more than one manner or means, and appellant was entitled to have the manner and means by which the victim was strangled clarified by the prosecution.

We must next determine whether the particular notice defect prejudiced the substantial rights of appellant. *See Adams v. State*, 707 S.W.2d 900, 903 (Tex.Crim.App. 1986). Since the manner and means of strangulation are not alleged, appellant was not apprised of the nature of the evidence which he would have to contest, thereby inhibiting appellant's preparation of a defense. Appellant's point of error one is sustained.

■ Appellant's point of error two contends that the trial court erred in admitting testimony regarding an extraneous offense of murder of a prior wife by appellant.

During the trial the following testimony was elicited by the State from Donna Harr, the victim's mother:

Q. At the time that she talked to you [on the phone] was she upset?

A. Yes.

Q. And did she tell you what had upset her?

A. Yes, sir.

Q. And what did she tell you, please?

. . . .

A. She was crying, she was scared, she was almost hysterical, she said she had found proof that Frenchy [appellant] had murdered one of his wives.

The testimony was objected to on the basis that it was irrelevant, prejudicial, and an

**872**

extraneous offense. The State argued the testimony was admissible to show motive. The objection was overruled and the testimony was admitted.

The general rule regarding the admissibility of extraneous offenses is that an accused may not be tried for a collateral crime or for being a criminal generally. *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim.App.1983); *Elkins v. State*, 647 S.W.2d 663, 665 (Tex.Crim.App.1983). There are exceptions to this general rule. An extraneous offense committed by the accused may be admissible upon a showing by the prosecution both that the extraneous offense is relevant to a material issue in the case, and the relevancy value of the evidence outweighs its inflammatory or prejudicial potential. *Williams*, 662 S.W. 2d at 346. Such evidence has been recognized to be admissible to show the motive of the accused or to refute a defensive theory. *Albrecht v. State*, 486 S.W.2d 97, 100–01 (Tex.Crim.App.1972). Even if an extraneous offense is offered to show motive or to refute a defensive theory, its relevancy and materiality must be shown to outweigh its prejudicial effect. *Williams*, 662 S.W.2d at 346. A relationship must be shown between the extraneous offense and the evidence necessary to prove the accused committed the crime for which he stands charged. *Albrecht*, 486 S.W.2d at 100.

After careful consideration of all the facts in this case, we cannot say that the relevance of the extraneous offense testimony outweighed the inherent prejudicial and inflammatory affect of this testimony. The phone conversation between the victim and her mother occurred some two weeks prior to the offense with which appellant was charged. The extraneous offense referred to happened seven years previously. There was no evidence, other than objected-to hearsay, that appellant killed a prior wife. It is clear that the prejudice to appellant of admitting testimony regarding a possible murder of a prior wife is substantial. The prosecution had already put on overwhelming evidence of marital problems between appellant and his wife and that his wife feared him. The extraneous offense

evidence was simply unnecessary, whose relevancy value did not outweigh its prejudicial potential.

■ Appellant also complains about the extraneous offense being brought in by the testimony of James Butters, an inmate in the Denton County Jail with appellant. At the close of the direct examination of Butters the following exchange with the prosecutor took place:

BY MR. WILSON (The prosecutor):

. . . .

Q. But you believed him when he told you he offed [killed] his wife?

A. Yeah, I thought it might be true. He was in jail with me.

MR. WILSON: Pass the witness.

RE–CROSS EXAMINATION

BY MR. SCOGGINS:

Q. Thought it might be true because he had been arrested and placed in jail?

A. Yeah.

Thereafter, defense counsel elicited testimony from Butters only pertaining to appellant's heart condition. Subsequently, on redirect examination the prosecutor pursued the following line of questioning:

BY MR. WILSON:

Q. Mr. Scoggins asked you if you didn't believe he was guilty because he was in jail?

A. Would you say that again?

Q. Mr. Scoggins asked you, you believed—you believed that he killed his wife because—because he was in jail with you, and had been charged with it?

A. Right.

Q. Is there any other circumstances about his past that you are aware of that re-enforce that belief and aided in that belief?

A. Yes, sir.

Q. And what are those? Had you ever been incarcerated with him before?

A. Not with him.

Q. Or in the same jail? Not in the same cell, but in the same jail house?

A. Yeah, when I was in Dallas County he had been arrested once before for the same thing.

Q. What do you mean?

Defense counsel objected and the court overruled the objection.

The prosecutor argues that the above question was asked because defense counsel had just inquired of Butters whether the reason he believed that appellant had killed his wife was because appellant had been arrested and placed in jail. As a result, the State contends the accused had opened the door to Butters's belief of appellant's guilt, and this entitled the State to inquire to the extraneous offense. The State's argument is without substance. It was the State who initially inquired into Butters's belief as to why he thought appellant had killed his wife. On recross examination defense counsel only restated for clarification purposes Butters's answer to the State's question as to his belief. Defense counsel made no further inquiries into Butters's belief. Appellant's point of error number two is sustained. Because of the above holding, we need not reach appellant's third point of error.

The trial court's judgment is reversed and the cause is remanded for a new trial.