

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00179-CR

_____

JIMMY DON MATTHEWS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 12-F-583-102

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Jimmy Don Matthews was convicted by a jury of criminal mischief resulting in damage of $20,000.00 or more but less than $100,000.00.[1]  The jury found the State's enhancement allegation true, and Matthews received an enhanced sentence of fourteen years' imprisonment. On appeal, Matthews argues that the trial court erred in (1) failing to instruct the jury to disregard testimony of a witness speaking to Matthews' prior bad acts and extraneous offenses, (2) allowing the owner of a day care to testify that children were present during the commission of the offense, and (3) failing to grant a motion for mistrial "based on the State's willful violation of the trial court's ruling on Defendant's Motion for Discovery."  We affirm the trial court's judgment.

## I.     Factual Background

Matthews lived approximately 150 yards away from his sister, Mazzie Matthews Jamison.  Yet, Jamison could not anticipate cordial visits from her brother due to the festering animosity he held for her.  Jamison testified that after their mother passed away, Jamison "inherited everything," and Matthews "was disinherited."  This rebuke "continued to degrade" the already doomed relationship.

Monty Foster, who had known Matthews for twenty years, testified that Matthews had told Foster "he was going to kill [Jamison]."  Sarah Beth Walker, who had grown up with

---

[1]In cause number 06-12-00180-CR, Matthews also appeals his conviction for criminal mischief resulting in damage of $1,500.00 or more but less than $20,000.00.

Matthews, testified that Matthews expressed ill will towards his sister and had told Walker "he would want to kill" his sister. Walker said that Matthews "meant it."

Instead of carrying out his threats, Jamison's home became the target of Matthews' aggravation. Melissa Brashears was operating a day care nearby when she heard gunshots at 9:20 a.m. on April 4, 2011. Afraid for the twelve children in her care, Brashears called 9-1-1 to report the incident. She looked out of the window, saw Matthews' truck, and "could tell there was shots coming out of that truck."

Officer Matthew Mitchell was already responding to "a burglary alarm call at that residence" when he was informed that "there were some shots fired." Mitchell arrived at Jamison's home to find it was riddled with bullet holes. Unaware that Matthews was the perpetrator, Mitchell went next door to Matthews' home to see if he had witnessed the shooting. Matthews acted as if he had been sleeping.

Officer Chad Ford also responded to the call. He counted at least thirty-six "bullet holes on the north, the west, and the south side of the house, on their windows, doors, all over the house," in the interior walls, and in the garage. According to Ford, the trajectory of the bullet holes indicated that they were fired from Matthews' property.

Lead investigator Robby McCarver testified that he recovered .22 caliber shell casings from Matthews' home and truck, which matched the caliber of the shell casings left at Jamison's house. He also observed "[m]ultiple bullet holes in the side of the residence that faces Jimmy Matthews' home."

3

The following day, Deputy Richard Godfrey was dispatched pursuant to a report that the house was being flooded.[2] A "water hose had been placed in one of the broken windows that was shot out and was flooding the home." The interior of the residence was saturated with roughly four inches of water, causing significant water damage. McCarver recovered a piece of the same water hose in Matthews' vehicle. Matthews was arrested.[3]

Foster testified that Matthews had told him "[t]hat he was going to knock the window out and put a hose in the window" "[t]o flood the house." After the incident, Matthews confessed to Foster that he had completed the act. Matthews also reported to Walker that he caused the bullet damage and flooding to Jamison's home.

Following the evidence, Matthews was convicted of criminal mischief.

## II. Complaints Regarding McCarver's Testimony

During McCarver's direct examination, the State asked, "Now, Officer, how did you know when you sort of went to Jimmy Don Matthews' house, how did you know to focus in on him as suspect?" McCarver responded, "Mr. Matthews is kind of known to law enforcement up here as being very angered at his sister and directed other offenses in that direction." Matthews' counsel objected because "[t]here was a motion in limine to keep out any extraneous offenses." The trial court overruled Matthews' objection.

---

[2]Ford testified that at the time of his walk-through of the home, there was no water on the floors.

[3]Captain Jeff Neal testified that during the interview, Matthews stated that a part of the water hose was in the back of his truck prior to being questioned about it.

Mathews' first point of error alleges that the trial court erred in failing to instruct the jury to disregard such testimony, but the argument on this point of error also complains that the testimony was inadmissible because it violated a ruling on a motion in limine.

A motion in limine is a preliminary ruling "subject to reconsideration by the court throughout the course of the trial." *Norman v. State*, 523 S.W.2d 669, 671 (Tex. Crim. App. 1975). Thus, the grant or denial of a motion in limine does not preserve any error for appeal. *Geuder v. State*, 115 S.W.3d 11, 14–15 (Tex. Crim. App. 2003). Accordingly, merely stating the evidence violates the trial court's previous grant of the motion in limine also does not preserve error for appeal. *Thierry v. State*, 288 S.W.3d 80, 87 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *Jones v. State*, 111 S.W.3d 600, 604 (Tex. App.—Dallas 2003, pet. ref'd); *Lusk v. State*, 82 S.W.3d 57, 60 (Tex. App.—Amarillo 2002, pet. ref'd).

However, the following next transpired:

> [Defense Counsel]: There was a motion in limine to keep out any extraneous offenses.
>
> [State's Attorney]: First of all, your opening statement you said identity is an issue in this case. So if the door wasn't opened, you just kicked it down.
>
> THE COURT: So far I only heard the answer is he's just known to law enforcement.
>
> [State's Attorney]: Sure. That's what he said.
>
> [Defense Counsel]: But identity wouldn't bring in his extraneous offenses.
>
> [State's Attorney]: No, but it will for the sister, not the mom, but his sister.
>
> [Defense Counsel]: That has still to be proven.
>
> [State's Attorney]: Well, that's up to the jury.

5

THE COURT: Ms. Crisp, don't go any further than that, but that answer so far, still overruled.

Here, it appears that counsel brought to the trial court's attention that a ruling on a motion in limine barred admission of extraneous offense evidence. While a motion in limine alone does not preserve error, counsel also objected that the evidence presented was an extraneous offense. The trial court considered the objection and overruled it. The issue is preserved for appeal.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith. TEX. R. EVID. 404(b). But it may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. *Id.* The proponent of such evidence has the burden to prove its materiality. *See Elkins v. State*, 647 S.W.2d 663, 665 (Tex. Crim. App. 1983).

There was some discussion after the objection was made that Matthews' identity as the perpetrator of the crime was at issue.[4] While an argument on the issue of identity was presented to the trial court, the State made no effort to prove the logical relevance of the other offenses. Therefore, the admission of evidence referring to extraneous offenses directed at the victim by Matthews was inadmissible; the trial court should have instructed the jury to disregard such evidence.

Next, we address whether admission of McCarver's statement was harmful to Matthews. Under Texas Rule of Appellate Procedure 44.2(b), we must disregard nonconstitutional error that does not affect a defendant's "substantial rights," that is, if, upon examining the record as a

---

[4]Matthews' counsel stated in his opening argument that "there's going to be a question of identity throughout this trial that will involve weather conditions and assumptions, basically." For the first time on appeal, the State also argues that the testimony was relevant "to explain the course and scope of the criminal investigation."

6

whole, there is a fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. TEX. R. APP. P. 44.2(b); *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010), *cert. denied*, 131 S.Ct. 3030 (2011). If the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, such nonconstitutional error is harmless. *Coble*, 330 S.W.3d at 280. In making this harm determination, we examine the entire record and calculate the probable impact of the error upon the rest of the evidence. *Id.*; *see Walters v. State*, 275 S.W.3d 568, 571 (Tex. App.—Texarkana 2008, no pet.) (citing *Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005)).

Here, Foster and Walker testified that Matthews disliked and threatened Jamison. The jury heard that Matthews told Foster "[t]hat he was going to knock the window out and put a hose in the window" "[t]o flood the house." Foster and Walker both reported that Matthews confessed to the crimes after their completion. McCarver's statement was not emphasized by the State, and no additional evidence of extraneous offenses was mentioned. Given Foster and Walker's testimony, which likely led the jury to its conclusion, we hold that the admission of McCarver's testimony was harmless.

## III.    There Was no Objection to Brashear's Testimony at Trial

Matthews argues that the trial court erred in allowing Brashears to testify that she operated a day care where children were present during the shooting. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Young v. State*, 382 S.W.3d 414, 420 (Tex. App.—Texarkana 2012, pet. ref'd) (citing *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996); *Brown v. State*, 189 S.W.3d 382, 385 (Tex. App.—Texarkana

7

2006, pet. ref'd)). A trial court abuses its discretion only when its decision is clearly wrong and lies outside the zone of reasonable disagreement. *Id.* (citing *Cantu v. State*, 842 S.W.2d 667 (Tex. Crim. App. 1992)).

Matthews filed the following motion in limine:

1. Defendant requests that the 911 recording be excluded from evidence due to the State's ability to call parties involved in the call.

    a. The defendant requests any mention by Missy Brashears as to a daycare or protecting children be excluded from testimony during trial pursuant to Rule 401 as to its relevance to the case at hand. Furthermore, the probative value of Mrs. Brashear's business [sic] is substantially outweighed by unfair prejudice and is likely to confuse the jury.

The motion in limine was denied. As explained earlier, a ruling on a motion in limine does not preserve error for appeal. *Thierry*, 288 S.W.3d at 87. During a pretrial hearing, Matthews again requested exclusion of either the entire 9-1-1 call, or, in the alternative, redaction of the excerpt that mentioned Brashears was a day care operator and that children were present during the offense. The trial court denied Matthews' request stating,

> I don't think the fact that Ms. Brashears is a day care protector of children, if I do a balancing test on that, it just doesn't weigh out. I can't see that that's going to be something that prejudices the jury. So I'm going to deny that part of it.[5]

---

[5] Although not included in Matthews' brief, we find that two excerpts from the record occurring prior to opening statements are worth mentioning. In the first, counsel attempts to obtain a running objection to the 9-1-1 recording:

> [Defense Counsel]: Your Honor, before the jury comes in, I'd just like to -- I believe that the State will get into, I don't know, maybe during opening, what we had talked about with the 911 phone call with day care and whatnot at Missy Brashears' house, I just wanted to enter a running objection to any of that information coming in about --
> THE COURT: Sure. And I understood in your Motion in Limine concerned basically the 911 call and the fact she talks about being a caregiver and takes care of children.
> [Defense Counsel]: Yes.
> THE COURT: Your running objection will be noted.

This ruling was applicable to the 9-1-1 call from Brashears which was never admitted at trial.

At trial, Brashears testified that she had a day care at her home and that children were present at the time of the offense. "As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion. . . ." TEX. R. APP. P. 33.1(a)(1). No objection was made during Brashear's testimony. Thus, error was not preserved. *Id.*; *Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002).

Also, Ford testified without objection that the shooting was "in a residential neighborhood, and we're only a block away from a day care. And I'm not sure how many residents were home at that time, but with that many shots being fired in a residential area, that's always a concern, especially with children around." If the complained-of evidence "is subsequently introduced from another source without objection, the defendant waives his earlier objection." *Massey v. State*, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996); *Bryant v. State*, 282 S.W.3d 156, 165 (Tex. App.—Texarkana 2009, pet. ref'd).

Matthews did not preserve his second point of error. It is overruled.

---

In the second excerpt, counsel secures a running objection to statements made in the 9-1-1 call:

> [Defense Counsel]: Your Honor, real quick before we bring them in, on that objection, is that just noted right now, or do we have any kind of ruling on that? Are you just going to handle it when it comes up?
> THE COURT: Are you talking about the ruling on the 911 call?
> [Defense Counsel]: Yes, sir.
> THE COURT: Well, I think I denied it yesterday, and you asked for a running objection. And I said I'll recognize it as a running objection each and every time it's mentioned.

There was no ruling either allowing or disallowing Brashear's testimony outside of the 9-1-1 call.

**IV. Trial Court Was Within its Discretion to Overrule the Motion for Mistrial Since a Ruling on Matthews' Discovery Motion Was Not Obtained**

Matthews argues that testimony from Foster and Walker concerning his confessions violated the court's ruling on his motion for discovery. Foster and Walker both testified without objection. It was not until after their testimony that counsel raised the issue of the alleged violation of the motion for discovery. A motion for mistrial complaining of "the State's willful violation of this Court's Discovery Order" was filed the following day. A trial court's ruling denying a motion for mistrial is reviewed for an abuse of discretion. *Duke v. State*, 365 S.W.3d 722, 727 n.9 (Tex. App.—Texarkana 2012, pet. ref'd) (citing *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009)). "The ruling must be upheld if it was within the zone of reasonable disagreement." *Id.* (quoting *Ocon*, 284 S.W.3d at 884).

Prior to trial, Matthews had filed a motion to discover witness statements which requested the "State to make available to the Defendant and his counsel any written statement made by any witness in this cause." A motion in limine requesting a hearing prior to admission of any oral or written statements was denied by the trial court.

The motion cited by Matthews in support of his argument sought discovery of

> [a]ll oral, written and recorded statements of the Defendant, and memoranda of said statements made to any investigating officer or any member of any law enforcement agency, or to any third party which is in the possession of or within the knowledge of the District Attorney's Officer or any agent thereof, including any law enforcement agency.[6]

Paragraph nine of Matthew's motion for discovery sought

---

[6] A video recording of an oral statement "that [Matthews] gave at the police department" was tendered to defense counsel.

> [a]ll statements made by any party or witness to this alleged offense,[7] in the possession of or within the knowledge of the District Attorney or any of his agents, including any law enforcement agency, whether such statements were written or oral, which might in any manner be material to the innocence of the Defendant or to the punishment, if any, to be set in this case.

During a pretrial hearing, the trial court examined each numbered paragraph of the motion for discovery. Matthews' brief represents to this Court that paragraphs three and nine of the motions were granted by the trial court. However, where there were no objections or contentions from the State as to a particular numbered paragraph, the trial judge stated, "I'm not going to grant it or deny it. We'll just move along, because it seems to be there's nothing in controversy here." An instruction to "move along" is not a ruling. *See Stevens v. State*, 671 S.W.2d 517, 521 (Tex. Crim. App. 1984). While the record clearly shows that some paragraphs of the motion for discovery were granted, paragraphs three and nine were not among them.

At the hearing on the motion for mistrial, the trial judge indicated that he had not ruled on these motions. He stated:

> I think, more than looking at the defense's discovery motion, I should concentrate more on what I actually ordered when we went through that on Monday afternoon. And I don't think that I ever made -- you know, when you look at what they're supposed to do, was there ever a plain directive from the Court to the State to do that, and I don't think I did. I don't think any of the three of us did.

"A defendant in a criminal case does not have a general right to discovery of evidence in the possession of the State." *Owens v. State*, 381 S.W.3d 696, 701 (Tex. App.—Texarkana 2012, no pet.). An exception exists if the trial court grants a motion for discovery and orders certain evidence be disclosed or if the evidence sought is discoverable by statute. *Id.*; *see Lindley v.*

---

[7]Foster and Walker did not witness the shooting or flooding of Jamison's home.

11

*State*, 635 S.W.2d 541 (Tex. Crim. App. 1982). "A motion requests action by the trial court and is not binding until granted." *Espinosa v. State*, 853 S.W.2d 36, 39 (Tex. Crim. App. 1993); *see Mitchell v. State*, 982 S.W.2d 425 (Tex. Crim. App. 1998). Given the record here, we cannot say that Matthews met his burden to secure a ruling on paragraphs three and nine of his motion for discovery. Accordingly, the denial of Matthew's motion for mistrial was within the court's discretion.[8]

## V. Conclusion

We affirm the trial court's judgment.

Jack Carter
Justice

Date Submitted: June 5, 2013
Date Decided: June 18, 2013

Do Not Publish

---

[8]Further, "the intended purpose of the discovery order [is] to prevent surprise and to permit appellant to prepare an adequate defense." *Hall v. State*, 283 S.W.3d 137, 164 (Tex. App.—Austin 2009, pet. ref'd) (quoting *Oprean v. State*, 238 S.W.3d 412, 415 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd)). Although the motion for mistrial claimed that Matthews would have employed a different trial strategy if he had knowledge of Foster's and Walker's testimony regarding Matthews'confessions, no motion for continuance was made. We have previously held that "[f]ailure to seek a continuance or postponement of the trial when the State allegedly fails to fully effectual discovery causing surprise waived any error." *McQueen v. State*, 984 S.W.2d 712, 718 (Tex. App.—Texarkana 1998, no pet.).