Affirmed and Memorandum Opinion filed March 27, 2007








Affirmed and Memorandum Opinion filed March 27, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01076-CR

____________

 

JASON VELA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 228th
District Court

Harris County, Texas

Trial Court Cause No. 1007201

 



 

M E M O R A N D U M    O P I N I O N








Appellant was convicted of aggravated robbery and sentenced
to fifty years= confinement in the Institutional Division of the
Texas Department of Criminal Justice.  At trial, the complainant and the victim
of an extraneous offense identified  appellant as the person who, together with
a heavier Hispanic man with longer hair, robbed or attempted to rob them at
gunpoint as they worked alone at night in restaurants referred to as Ataquerias.@  Appellant argues
on appeal that his conviction should be reversed because the witnesses were not
credible and the extraneous-offense evidence was erroneously admitted.  We
disagree and affirm the trial court=s judgment.

I.  Factual and Procedural History

Argentina Garcia is the sole owner and operator of a
taqueria located at the corner of Long Drive and Lancaster in a predominantly
Hispanic neighborhood of southeast Houston.  On November 12, 2004, Garcia
closed the taqueria and cleaned the interior, leaving the money she had earned
that day in a box in the sink.  At nearly 2:20 a.m., Garcia went outside to
turn off the propane gas and saw a Achubby@ Hispanic man with
slightly long hair and dark clothing standing outside.  Garcia told the man the
taqueria was closed, and continued walking around the outside of the taqueria
to the propane tanks.  She then heard someone inside the taqueria, and when she
moved back to look, she was confronted by a tall, thin, fair-skinned man
wearing light-colored clothing and holding a silver pistol.  The man pointed
the pistol at Garcia and told her not to move.  Garcia was afraid the man would
kill her.  As Garcia later testified, she faced the man for two minutes before
she ran screaming across the street toward a bar.  Because the bar was closing,
there were people outside, and she told them what had happened.  One of these
bystanders called the police.

Officer Raul Yzquierdo, Jr. was the first police officer to
arrive at the scene.  He discovered a small crowd in the middle of the street
between the taqueria and the bar.  According to Yzquierdo, Garcia was still
frightened, and continued crying and screaming.  After Garcia described the two
men she had seen, an unidentified person in the crowd thrust a cell phone at
Officer Yzquierdo.  He took the phone and listened as an unidentified person
gave him additional information about the suspects.  From other evidence
presented at trial, it is apparent that the caller told Yzquierdo that police
should look for a red vehicle in a certain location.  Yzquierdo relayed this
information to a dispatcher.








Officer Gabriel Salcido heard the dispatch and followed a
red vehicle as it made a sudden left turn.  The vehicle=s lights initially
were off, but as Salcido drove closer, the car=s hazard lights
were activated.  Salcido waited until other officers joined him before he
turned on the lights of his patrol car and signaled to the vehicle=s driver to pull
over.  The vehicle traveled another block and turned before the driver
stopped.  

The driver was a juvenile with no license or registration. 
He was carrying $242 in bills in his pocket.  The car=s two passengers
matched Garcia=s description of the two men who approached her.  One
of these men was appellant Jason Vela.

Police placed each of the men into a patrol car, and three
patrol cars returned to the scene of the crime.  Garcia was asked to approach
each patrol car and determine if the occupant was one of the men she
described.  Garcia did not recognize the juvenile, but immediately identified
the heavier man as the man she had initially seen outside the taqueria.  When
she attempted to look at appellant=s face, he turned
his head, and as Officer Salcido testified, Atried to duck down
in the backseat.@  Once she saw his face, however, Garcia
identified appellant without hesitation as the man who had pointed a gun at
her.

Appellant was arrested for aggravated robbery.  Because
Garcia had not counted her earnings for the day at the time of these events,
she was unable to say whether any cash had been stolen.  She did, however,
inform police that her cell phone had been taken. 








Garcia and Officers Yzquierdo and Salcido testified at
trial.  Over appellant=s objections, Neris Velasquez also
testified to an extraneous offense.  Like Garcia, Velasquez operates a taqueria
at an intersection in a predominantly Hispanic neighborhood.  Three days before
Garcia was robbed, Velasquez was working alone at around 10:30 p.m. when three
men approached the taqueria.  He described one of the men as chubby, with long
hair, and described the second man as tall, skinny, and light-skinned. 
Velasquez described the third male simply as Ayoung.@  According to Velasquez,
he saw the tall, skinny man for two or three minutes, and he identified this
man as appellant.  Velasquez testified that appellant pointed a gun at him and
demanded money while the other two suspects tried to force the door of the
taqueria open.  The suspects left after Velasquez dropped to the floor and
called  police on his cell phone.  Officer Patricio Saldivar, Jr. testified
that the two taquerias are approximately two miles apart, and that this
distance would take no more than ten minutes to drive.

Officer Gregory Salazar was the sole witness called by the
defense.  He testified that he responded to Velasquez=s call to the
police and wrote in his offense report that Velasquez said the man with the gun
had long hair.

Appellant was convicted of aggravated robbery, fined
$10,000, and sentenced to fifty years= confinement in
the Institutional Division of the Texas Department of Criminal Justice.  This
appeal ensued.

II.  Issues
Presented

In his first two issues, appellant challenges the legal and
factual sufficiency of the evidence on the grounds that the State=s witnesses are
not credible.  In his remaining two issues, appellant contends the trial court
erred in admitting evidence of an extraneous offense because this evidence was
irrelevant to any issue in the case and its probative value was substantially
outweighed by unfair prejudice.[1]








III.  Analysis

A.      Sufficiency
of the Evidence

1.       Legal
Sufficiency 

When reviewing the legal sufficiency of the evidence, we
examine the evidence in the light most favorable to the verdict to determine
whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); Mason v. State, 905
S.W.2d 570, 574 (Tex. Crim. App. 1995) (en banc).  We do not ask whether we
believe that the evidence at trial established guilt beyond a reasonable
doubt.  Jackson, 443 U.S. at 318-19.  Rather, we determine whether any
rational trier of fact could have found the essential elements of aggravated
robbery beyond a reasonable doubt.  See Mason, 905 S.W.2d at 574.

2.       Factual
Sufficiency 

We begin a factual sufficiency review by viewing all of the
evidence in a neutral light. See Watson v. State, 204 S.W.3d 404, 414
(Tex. Crim. App. 2006) (citing Cain v. State, 958 S.W.2d 404, 408 (Tex.
Crim. App. 1997) (en banc)).  We will not reverse unless we are able to say,
with some objective basis in the record, that the great weight and
preponderance of the evidence contradicts the jury=s verdict.  Id.
at 417.  We may not re-weigh the evidence or substitute our judgment for
that of the jury.  See Cain, 958 S.W.2d at 407.  Unless the record
clearly reveals a different result is appropriate, we Amust defer to the jury=s determination concerning what
weight to give contradictory testimonial evidence because resolution often
turns on an evaluation of credibility and demeanor.@  Johnson v. State, 23 S.W.3d
1, 8 (Tex. Crim. App. 2000) (en banc).








3.         Applicable
Law        

A person
commits the offense of robbery if the actor, while in the course of committing
theft, and with intent to obtain or maintain control of the property,
intentionally or knowingly threatens or places another in fear of imminent
bodily injury or death.  See Tex.
Penal Code Ann. ' 29.02(a)(2) (Vernon 2003 and Supp. 2006).  A person
commits the offense of theft if he unlawfully appropriates property with the
intent to deprive the owner.  Id. at ' 31.03(a).  The offense of robbery
becomes aggravated robbery if the
actor uses or exhibits a deadly weapon during the commission of the robbery.  Id.
at '' 29.03(a)(2), (b).  A firearm is a
deadly weapon as a matter of law.  See id. at ' 1.07(a)(17)(A). 

4.       Legally and Factually Sufficient Evidence Supports
Conviction

Appellant first contends that the evidence is legally and
factually insufficient to support his conviction because the witnesses against
him were not credible.  Specifically, he argues that Garcia=s testimony was
not credible because she was unable to say whether any cash had been taken. 
Garcia did testify that her cell phone was stolen, and appellant does not
contend that there is insufficient evidence that a robbery occurred.  He
instead argues that because Garcia does not know if cash was stolen, her
remaining testimonyCincluding, presumably, her description of
the crime and her identification of appellant as a perpetratorCis not credible. 
Appellant cites no authority in support of this argument, and does not explain
how Garcia=s inability to testify to one fact undermines her
ability to testify reliably to other, independent facts.  We therefore consider
this argument waived.  See Tex.
R. App. P. 38.1(h).








Appellant also asserts that no physical evidence links him
to the crime.  No firearm was recovered, and the police did not discover cash
that Garcia identified as hers.  Thus, he argues, Garcia=s testimony
creates only a strong suspicion of guilt.  But appellant cites no authority
that physical evidence is required to sustain his conviction, or that, in its
absence, the complainant=s testimony or identification are not
credible.  Cf. Harmon v. State, 167 S.W.3d 610, 614 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d) (holding the evidence presented legally
and factually sufficient to uphold the appellant=s aggravated
robbery conviction when the appellant was identified only by the complainant Awithout DNA
evidence, fingerprint evidence, or evidence of the gun or cash . . . .@); Batts v.
State, 673 S.W.2d 666, 668 (Tex. App.CSan Antonio 1984,
no pet.) (A[T]he testimony of the complainant standing alone is
sufficient to sustain the conviction.@).  Thus, this
argument also is waived.  See Tex.
R. App. P. 38.1(h).

In each of these arguments, appellant has correctly pointed
out that particular evidence or testimony was not presented at trial.  But the
lack of such evidence does not affect the sufficiency of the evidence that was
presented.  Garcia testified that she viewed appellant for two minutes while he
was illuminated by good light from two sources.  Officer Yzquierdo also
testified that the taqueria was illuminated by its own lights and by
streetlights.  According to Garcia, appellant pointed a silver pistol at her
and told her not to move.  She ran across the street, afraid that appellant
would kill her, and later discovered that her taqueria had been ransacked and
her cell phone stolen.








Appellant was apprehended in the company of a person who
matched Garcia=s description of the second man who participated in
the robbery.  All of the witnesses who were present when Garcia identified
appellant at the scene testified that appellant tried to prevent Garcia from
seeing his face.  Officer Yzquierdo testified that appellant turned his head
away when Garcia tried to see him.  Officer Salcido testified that appellant Atried to duck down
in the backseat,@ and Garcia testified that appellant was Ahiding his face@ when she
approached the patrol car.  Although appellant=s defense counsel
implied at trial that appellant averted his face because police shone a
flashlight in his eyes, a rational jury could infer that appellant was
conscious of his guilt and attempted to prevent Garcia from identifying him.  See
Gonzalez v. State, 195 S.W.3d 114, 125 n.47 (Tex. Crim. App. 2006) (noting,
in the course of discussing forfeiture by wrongdoing, that courts may Ainfer from the
record evidence that the defendant intended to prevent a witness or victim from
identifying or testifying against him . . . .@);[2]
Felder v. State, 848 S.W.2d 85, 97B98 (Tex. Crim.
App. 1992) (en banc) (discussing relevance of an appellant=s presentation of
false identification to police officers) cert. denied, 510 U.S. 829, 114
S. Ct. 95, 126 L. Ed. 2d 62 (1993).  The witnesses also agree that Garcia
identified appellant without hesitation, and in court, she again identified
appellant as the man who held the gun.  Velasquez provided further evidence of
appellant=s identity.

Appellant asserts,  without supporting authority, that the
evidence could be legally and factually sufficient only if Aappellant=s identity was not
an issue at trial.@  We disagree.  Appellant=s identity was the
central issue at trial.  It is undisputed that a person matching appellant=s description
pointed a pistol at Garcia and told her not to move.  Garcia testified that she
was afraid the armed man would kill her, and her testimony is corroborated by
Officer Yzquierdo, who described Garcia as Ayelling,@ Ascreaming,@ Acrying,@Aupset,@ and Afrightened.@  Garcia=s testimony that
her cell phone was taken is also undisputed.  The jury was entitled to find all
of this testimony credible, establishing all of the essential elements of
aggravated robbery.  Thus, the only remaining question is whether appellant is
the man Garcia described.  Although appellant=s defense counsel
argued that Athis is a case of mistaken identity@ and attempted
through cross-examination to undermine the credibility of the State=s witnesses, the
jury impliedly found Garcia=s testimony credible on this issue as
well.  On the record before us, we have no basis on which to disturb that
implied finding.








After viewing the evidence in the light most favorable to
the verdict, we conclude that a rational jury could have found the essential
elements of aggravated robbery beyond a reasonable doubt.  Viewing the evidence
in a neutral light, we are unable to find an objective basis in the record
supporting appellant=s contention that the great weight and
preponderance of the evidence contradict the jury=s verdict. 
Accordingly, we conclude the evidence is both legally and factually sufficient
to support the verdict, and we overrule appellant=s first and second
issues.

B.      Extraneous
Offense Evidence

Appellant next contends that the trial court erred in
admitting Velasquez=s extraneous-offense testimony as evidence
of appellant=s identity.  See Tex. R. Evid. 404(b).  Appellant argues that this evidence
should have been excluded as irrelevant because his identity was not at issue
and the two offenses are dissimilar.  In addition, appellant contends that the
probative value of the extraneous-offense evidence was substantially outweighed
by unfair prejudice.  See Tex. R.
Evid. 403.

1.       Standard
of Review

We review a trial court=s ruling admitting
extraneous-offense evidence for abuse of discretion.  Martin v. State,
173 S.W.3d 463, 467 (Tex. Crim. App. 2005) (en banc).  We will uphold the
ruling if, in light of the evidence before the trial court, the ruling is
correct on any theory of law applicable to the case.  Id.

2.       Identity at Issue

As a threshold issue, appellant contends that
extraneous-offense evidence was not relevant to any issue in the case because
he did not place his identity at issue.  He then relies on Elkins v. State
for the proposition that extraneous-offense evidence of identity is not
relevant, but instead is inherently prejudicial.  647 S.W.2d 663, 665 (Tex.
Crim. App. 1983) (en banc).  We do not find Elkins instructive.  First,
it was decided before the adoption of the present Rules of Evidence; thus, it
does not stand for the proposition urged by appellant that the
extraneous-offense evidence was improperly admitted under Texas Rule of
Evidence 404(b).  Moreover, identity was not at issue in Elkins, but is
at issue here.    








In Elkins, the appellant was also convicted for
aggravated robbery.  The evidence against him included the victim=s testimony
identifying him and identifying clothing and a pistol recovered from the car in
which the appellant was a passenger.  Id. at 664.  After the complainant
Awithstood
inconsequential cross[-]examination,@ the State
presented six witnesses who testified regarding an extraneous offense.  Id. 
In discussing the record, the Court of Criminal Appeals emphasized that the
complainant=s identification of the defendant Astood in no way
impeached or even weakened by the >manner= of
cross[-]examination.@  Id. at 665.  Nevertheless, the
State devoted Afive times the witnesses and testimony to the
extraneous offense@ as to the charged offense.  Id. at
666.  The Court held that A[t]he record as a whole reflects the issue
of his >identity= was not contested
by appellant so as to render extraneous[-]offense evidence more probative than
prejudicial.@[3] Id.








Unlike the complainant=s testimony in Elkins,
Garcia=s identification
of the accused in this case was vigorously contested during cross-examination. 
As the Court of Criminal Appeals has repeatedly observed, the accused can open
the door to admission of extraneous-offense evidence by placing his or her
identity at issue during cross-examination.  See, e.g., Page v. State,
137 S.W.3d 75, 78 (Tex. Crim. App. 2004) (APage I@) (defense
cross-examination placed identity at issue by suggesting that the 200-pound
assailant described by the complainant was not the 265-pound defendant); Siqueiros
v. State, 685 S.W.2d 68, 71 (Tex. Crim. App. 1985) (en banc) (evidence of a
similar extraneous offense admissible because the defense strategy was aimed at
undermining the State=s identification, and cross-examination
elicited testimony that the crime scene was dark and the witness did not recall
that the defendant had a mustache); Walker v. State, 588 S.W.2d 920, 922B23 (Tex. Crim.
App. 1979) (evidence of a similar extraneous offense admissible after witness
impeached regarding failure to recall defendant=s tattoos); Ferrell
v. State, 429 S.W.2d 901, 903 (Tex. Crim. App. 1968) (extraneous-offense
evidence admissible after identity contested in an unspecified manner during
cross-examination of complainant).  Specifically, cross-examination places
identity at issue if the questions imply that the witness=s identification
of the defendant is not trustworthy.  Page I, 137 S.W.3d at 78.  The
relative strength or weakness of such an implication does not affect the
admissibility of extraneous-offense evidence under Rule 404(b).  Id. at
79 (AThat the
impeachment was not particularly damaging or effective in light of all the
evidence presented is not the question.  The question is whether impeachment
occurred that raised the issue of identity.@).[4] 


Here, appellant=s defense counsel
placed identity at issue during cross-examination.  First, his questions to
Garcia implied that it was too dark for Garcia to accurately identify the
perpetrator: 

Q:      So, in looking at your taco standC

A:      Yes, sir.

Q:      Right above the door, there=s no light, is there?

A:      The light=s right there.

Q:      I=m saying above the door.  There is no light, is there?

A:      No, sir.

Q:      So, you=re relying on a small light on the front of the taqueria?

A:      And the one in the back.

Q:      Okay.

The attorney also implied that a trustworthy observation
would have resulted in a more detailed description of the suspect=s face, body,
clothing, and accessories:








Q:        [Y]ou gave a description to Officer Yzquierdo, correct?

A:        Yes, sir.

Q:        Okay.  And you said the person with the gun was a tall, thin
gentleman?

A:        Yes, sir.

Q:        With light skin?

A:        Yes, sir.

Q:        Light clothing?

A:        Yes, sir.

Q:        You didn=t describe his
mouth.

A:        No, sir.

Q:        You didn=t describe his
ears.

A:        No, sir.

Q:        You didn=t describe his
eyes.

A:        No, sir.

Q:        You didn=t describe his
nose.

A:        No, sir.

Q:        Okay.  You didn=t
describe if he had any tattoos or not.

A:        No, sir.

Q:        Didn=t describe if he had any scars or not.

A:        No, sir.

Q:        You didn=t describe his
shoes.

A:        No, sir.

Q:        Okay.  You didn=t
describe if his shirt had any designs, stripes, anything like that.

A:        No, sir.

Q:        You didn=t describe if
the pants were tanCtan or khaki.

A:        No, sir.

Q:        You didn=t describe if
he had any jewelry on or not.

A:        No, sir.

Q:        You didn=t describe if
he had facial hair or not.








A:        No, sir.

Because
appellant=s identity was placed at issue by this line of questioning,
extraneous-offense evidence tending to prove identity became relevant to an
issue in the case.[5]

3.         Extraneous
Offense was a ASignature@ Offense

Extraneous-offense
evidence does not become admissible solely because identity is at issue.  When
the extraneous offense is introduced to prove identity by comparing common
characteristics, the circumstances of the extraneous offense must be so similar
to the charged offense that the offenses illustrate the defendant=s Adistinctive and
idiosyncratic manner of committing criminal acts.@  Martin, 173 S.W.3d at 468
(quoting Owens v. State, 827 S.W.2d 911, 915 (Tex. Crim. App. 1992) (en
banc)).  The common characteristics of the offenses must be so unusual as to
act as the defendant=s Asignature.@  Taylor v.
State, 920 S.W.2d 319, 322 (Tex. Crim. App. 1996).  The signature
must be apparent from a comparison of the circumstances in both cases.  Page
v. State, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006) (APage II@) (citing Bishop
v. State, 869 S.W.2d 342, 346 (Tex. Crim. App. 1993)).  The two offenses
need not, however, be identical.  Id., 2006 WL 3733256, at *4.








Appellant contends that the trial court abused its
discretion in admitting extraneous-offense evidence to show identity because
the extraneous offense is not sufficiently similar to the charged offense.  In
his brief, however, appellant fails to identify dissimilarities between the two
offenses, while our review of the record reveals substantial similarities.  In
each offense, a person described as a tall, thin, fair-skinned man accompanied
by a person described as a Achubby@ Hispanic man
attempted the nighttime robbery of a taqueria located at an intersection in a
predominantly Hispanic neighborhood on the east or southeast side of Houston. 
The two offenses occurred only three days apart.  In both offenses, the
complainant was alone, and identified appellant as the tall, thin, fair-skinned
suspect.  In both offenses, appellant was armed with a pistol, and was the only
suspect who displayed a weapon or spoke directly to the victim.  Both victims
spoke limited English.[6] 
Neither victim observed the men arrive or leave in a vehicle; in both
instances, the offenders apparently approached and left the taquerias on foot.[7]

The differences between the two offenses are slight. 
Garcia described appellant=s gun as silver, while Velasquez described
appellant=s gun as Alighter brown.@  Velasquez
testified that appellant and the heavy-set man were accompanied by a young man,
and although Garcia did not see a third suspect, she heard someone inside the
taqueria after she went outside and saw the two suspects that she later
identified.  Moreover, appellant was apprehended in a car with the heavy-set
man and a youth within thirty minutes of the Garcia robbery. 

Based on our review of the record, we conclude that the
trial court did not abuse its discretion by admitting the extraneous-offense
evidence.  Because the facts of the charged offense and the extraneous offense
show a pattern of conduct sufficiently distinctive to constitute a Asignature,@ the
extraneous-offense evidence was properly admitted to establish appellant=s identity
pursuant to Texas Rule of Evidence 404(b).  We overrule appellant=s third issue.

4.       Absence
of Prejudice








Finally, appellant argues that the probative value of the
extraneous-offense evidence was substantially outweighed by unfair prejudice. 
If relevant criteria, viewed objectively, caused us to conclude that the danger
of unfair prejudice substantially outweighed the probative value of the
extraneous-offense evidence, we would hold that the trial court erred in
admitting such evidence.  See Montgomery v. State, 810 S.W.2d 372, 392
(Tex. Crim. App. 1990) (en banc) (op. on reh=g).  Although
several of these relevant criteria are discussed in Montgomery,[8]
appellant does not contend that any of those criteria are present here. 
Instead, appellant argues only that the extraneous offense was not so similar
to the charged offense as to constitute a Asignature@ offense.  For the
reasons we have already discussed, we disagree.  Accordingly, we overrule
appellant=s fourth issue.  

IV.  Conclusion

We hold the evidence is legally and factually sufficient to
support appellant=s conviction, and that the trial court did
not abuse its discretion in admitting evidence of an extraneous signature
offense to establish appellant=s identity.  We therefore affirm the
judgment of the trial court.

 

 

 

 

 

/s/      Eva M. Guzman

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed March 27, 2007.

Panel consists of
Justices Anderson, Hudson, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Although appellant also asserts that the probative
value of this evidence was substantially outweighed by undue delay and
confusion of the issues, these objections were not raised in the trial court or
briefed on appeal.  Thus, these arguments are waived.  Tex. R. App. P. 33.1(a), 38.1(h).





[2]  A jury is no less capable of drawing such an
inference.





[3]  Although appellant relies on Elkins for the
proposition that identity was not at issue, and therefore, extraneous-offense
evidence was not admissible under Texas Rule of Evidence 404(b), Elkins
was actually decided on the grounds that the danger of unfair prejudice, delay,
and confusion of the issues resulting from the evidence substantially
outweighed its probative value.  These issues are now addressed by Texas Rule
of Evidence 403.  Thus, the reasoning of Elkins is more closely related
to Texas Rule of Evidence 403 than to Texas Rule of Evidence 404(b).





[4]  This relative strength of the State=s case and the weakness of the impeachment still may
be considered in performing a Rule 403 balancing test.  See Montgomery v.
State, 810 S.W.2d 372, 392B93 (Tex. Crim.
App. 1990) (en banc) (op. on reh=g).






[5]  Appellant=s
defense attorney asked Officer Yzquierdo similar questions about Garcia=s description.





[6]  Garcia and Velasquez testified through an
interpreter. 





[7]  Garcia did not see the men approach, but saw men
running away from the taqueria; Velasquez did not see the men leave, but saw
them approach on foot.





[8]  Id. at 392B93.