COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-233-CR

 

 

GUILLERMO
LUGO                                                               APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL DISTRICT
COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction

Appellant Guillermo Lugo appeals his conviction
for murder.  In five issues, Lugo argues
that the trial court erred by admitting trial testimony regarding his statement
made to police; that the evidence is legally and factually insufficient to
sustain his conviction; and that the trial court erred by overruling his
objection to a punishment-enhancement paragraph in the indictment.  We will affirm.








II.  Background

On November 21, 2002, Fort Worth Police Officer
Robert Presney went to a local motel to investigate a homicide.  Presney found Ernesto Delgadillo lying face
down on the floor of a motel room with a fatal bullet wound in his back.  Presney learned that Delgadillo was not the
registered occupant of the room.  After
securing a search warrant, Presney searched the room and found further evidence
that a homicide had occurred.  Fort Worth
Police Detective Thomas Boetcher arrived and also searched the room.  During his search, Boetcher discovered pay
stubs with Lugo=s name on them.  Boetcher then obtained an arrest warrant for
Lugo, but Lugo could not be located.








During his investigation, Boetcher interviewed
Marquita Sanchez.  Sanchez said that she
had gone to the motel room on November 21, 2002, to sell Lugo drugs.  She also said that she had seen Lugo carry a
.38 revolver in the past.  She stated
that when she arrived at the motel room, Delgadillo was knocking on its
door.  According to Sanchez, Lugo let her
in but did not initially allow Delgadillo to enter.  While they carried out a drug deal, Sanchez
said that Delgadillo continued to demand that Lugo let him in by persistently
knocking on the door and verbally insisting to be let in.  Lugo eventually let Delgadillo in.  Sanchez said that Delgadillo soon began
begging Lugo for drugs.  Sanchez said the
two began to argue.  Sanchez said that
Delgadillo allowed Lugo to beat on him despite his superior strength because he
Awant[ed]
the drugs so bad[ly].@ 
By Sanchez=s account, Lugo and Delgadillo
began to wrestle over a gunCa
handgun consistent with the .38 revolver Sanchez had seen Lugo carry
previously.

Worried that the quarrel might lead to her being
caught with drugs, Sanchez grabbed her things and walked toward the door.  At that time, Delgadillo was on his
knees.  As Sanchez reached the door, she
heard a gunshot.  She turned back around
and saw Delgadillo falling face forward and Lugo holding the gun.  Sanchez said she ran from the motel room and
got into her car.  As she prepared to
leave, she saw Lugo and two girls run down the stairs and get into a
truck.  She then saw Lugo go back up the
stairs briefly, return to the truck with a black duffle bag, and drive away.

More than five years after the initial
investigation, Fort Worth Police cold case file Detective Manny Reyes flew to
Columbus, Ohio, to interview Lugo, who had been apprehended and was being
detained.  Initially, Lugo denied being
in Fort Worth at the time of the murder; but Lugo eventually admitted that he
was in the motel room when the murder occurred; that some of the items found in
the motel room during the murder investigation belonged to him; and that he
drove a truck at the time of the murder. 
The State indicted Lugo for the murder of Delgadillo.  The indictment included two felony
enhancement paragraphs.








Lugo moved to have his statement to Reyes
suppressed.  The trial court denied the
motion.  Lugo also made numerous
objections, many of which the trial court sustained, to portions of his
recorded statement being admittedCso much
so that the prosecutor, Lugo=s
counsel, and the trial court determined that the best course of action was to
allow the prosecutor to develop Lugo=s
statement through questioning Reyes, rather than allowing the recorded
statement to actually be played for the jury.

During the trial, Reyes testified about portions
of Lugo=s
statement.  Specifically, Reyes testified
that Lugo had initially denied being at the motel room when Delgadillo was
murdered, but later in the interview admitted that he was in the motel room at
the time of the shooting; that he had been the victim of an attempted robbery;
and that although he had heard a shot fired during the alleged robbery, he did
not shoot anyone.  Reyes also testified
that he had taken buccal swabs of Lugo during the interview.  The State introduced evidence that DNA from
these swabs matched DNA taken from the motel room where Delgadillo was
murdered.








The State also called Sanchez as its key witness,
and she testified to the contents of her statement made to Boetcher.  Marc Krouse of the Tarrant County District
Medical Examiner=s office testified that
Delgadillo died of internal bleeding from a contact-range gunshot wound and
that Delgadillo=s knees had bruising and
scraping consistent with a scenario where Delgadillo was kneeling when he was
shot.  Michael Ward, a senior forensic
scientist for the Fort Worth Police Department Crime Laboratory, testified that
the bullet that killed Delgadillo was a .38 projectile that was likely fired
from a .38 revolver.  A jury found Lugo
guilty and assessed punishment at twenty-five years=
confinement.  This appeal followed.

III.  Article 38.22 and Lugo=s
Statement

In his second issue, Lugo argues that the trial
court erred by allowing Reyes to testify about statements Lugo made to Reyes
during interrogation.  The focus of Lugo=s
argument is that Reyes=s being allowed to testify about
information contained within Lugo=s
statement, rather than the statement itself being admitted, violated the
statutory requirement that in order for a 
custodial statement to be admitted at trial, it must be reduced to
writing or electronically recorded.  See
Tex. Code Crim. Proc. Ann. art. 38.22, ' 3(a)(1)
(Vernon 2005).  We conclude that Lugo
failed to preserve this complaint for our review.








To preserve a complaint for our review, a party
must have presented to the trial court a timely request, objection, or motion
that states the specific grounds for the desired ruling if they are not apparent
from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Mosley v.
State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999). 
Further, the trial court must have ruled on the request, objection, or
motion, either expressly or implicitly, or the complaining party must have
objected to the trial court=s
refusal to rule.  Tex. R. App. P.
33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex. Crim. App.
2004).  And the complaint made on appeal
must comport with the complaint made in the trial court or the error is
forfeited.  Heidelberg v. State,
144 S.W.3d 535, 537 (Tex. Crim. App. 2004); Vafaiyan v. State, 279
S.W.3d 374, 383 (Tex. App.CFort
Worth 2008, pet. ref=d).

Although Lugo objected to the admission of
portions of his statement and also objected that his statement was the product
of police coercion, none of these objections comport with the complaint he now
brings on appealCthat the trial court erred by
allowing Reyes to testify about statements Lugo made to Reyes during
interrogation.  Because the complaint
Lugo now makes on appeal does not comport with any complaint made to the trial
court, he has forfeited this error, if any. 
See Heidelberg, 144 S.W.3d at 537 (holding that defendant
failed to preserve for appellate review complaint that prosecutor=s use of
post-arrest silence against defendant violated the Texas Constitution because
complaint did not comport with defendant=s trial
court objection based solely on the federal Constitution).  We overrule Lugo=s second
issue.

IV.  Voluntariness
of Lugo=s Statement








In his first issue, Lugo argues that the trial
court erred by denying his motion to suppress and allowingCthrough
Reyes=s
testimonyChis statement to be admitted at
trial.  Lugo argues that Reyes Astepped
over the line and coerced@ Lugo=s
statement.  Although in his brief Lugo
combines the analysis of his first and second issues (the second issue that we
have already held was not preserved), the gist of Lugo=s first
issue is that his statement was made involuntarily because of remarks Reyes
made to Lugo during the interview.  Thus,
the significance of Lugo=s first issue is whether Reyes=s
remarks overbore the voluntariness of Lugo=s
statement.  We agree with the trial court
that Lugo=s statement was Avoluntarily
given.@

We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  We give almost total
deference to a trial court=s
rulings on questions of historical fact and application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor, but we review
de novo application-of-law-to-fact questions that do not turn on credibility
and demeanor.  Amador, 221 S.W.3d
at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson
v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002).








The determination of whether a confession is
voluntary is based on an examination of the totality of the circumstances
surrounding its acquisition.  Reed v.
State, 59 S.W.3d 278, 281 (Tex. App.CFort
Worth 2001, pet. ref=d).  A confession is involuntary if circumstances
show that the defendant=s will was Aoverborne@ by
police coercion.  Creager v. State,
952 S.W.2d 852, 856 (Tex. Crim. App. 1997). 
In other words, the statement is involuntary if the record reflects Aofficial,
coercive conduct of such a nature@ that
any statement obtained thereby is Aunlikely
to have been the product of an essentially free and unconstrained choice by its
maker.@  Alvarado v. State, 912 S.W.2d 199, 211
(Tex. Crim. App. 1995).  A defendant=s
statement must not have been obtained by the influence of hope or fear.  Creager, 952 S.W.2d at 856 (citing Cain
v. State, 18 Tex. 387, 390 (1857)). 
Even trickery or deception does not make a statement involuntary unless
the method was calculated to produce an untruthful confession or was offensive
to due process.  Id. at 856
(citing Dotsey v. State, 630 S.W.2d 343, 349 (Tex. App.CAustin
1982, no pet.)).  The ultimate question
is whether the suspect=s will was overborne.  Id. (citing Armstrong v. State,
718 S.W.2d 686, 693 (Tex. Crim. App. 1985)).








Lugo claims that his statement to Reyes was
coerced because Reyes made two remarks to him during interrogation.  First, Reyes asked Lugo, A[W]hy
don=t you
just tell me . . . the truth about what happened and see if we
can prove what you say?@ 
Second, Reyes made the statement to Lugo, AI swear
to you that I will do whatever I can with the evidence, with witnesses[,] or
whatever, with the laboratory, whatever to prove what you told me is the truth.@  Lugo provides no argument as to how these
remarks produced an untruthful confession, were offensive to due process, or
otherwise caused his will to be overborne. 
We conclude that these statements did not overbear Lugo=s will
and that Lugo=s statement to Reyes was
essentially a free and unconstrained choice. 
If anything, Reyes=s remarks conveyed a sense that
the veracity of Lugo=s statement would eventually be
discovered.  See Gomes v. State, 9
S.W.3d 373, 377B78 (Tex. App.CHouston
[14th Dist.] 1999, pet. ref=d)
(reasoning that defendant=s will was not overborne by
interrogator=s remarks that conveyed Aa sense
of inevitability@ that the truthfulness of
defendant=s statements would be
discovered).  We hold that the trial
court did not err by denying Lugo=s motion
to suppress his statement, and we overrule Lugo=s first
issue.

V.  Sufficiency of the Evidence

In his third and fourth issues, Lugo argues that
the evidence is legally and factually insufficient to convict him of
murder.  Specifically, Lugo contends that
the only eyewitness who testified Ais
totally unbelievable@ because she is a convicted
felon, her recollection of the murder Achanged
many times,@ and she admitted under
cross-examination that she Awas not
completely truthful@ with the lead detective during
the police investigation.

A.     Law
on Murder

A person commits murder if he intentionally or
knowingly causes the death of an individual or intends to cause serious bodily
injury and commits an act clearly dangerous to human life that causes the death
of an individual.  Tex. Penal Code
Ann. ' 19.02(b)(1)B(2)
(Vernon 2003).

i.      Legal
Sufficiency Review

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).








This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270
S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075
(2009).  Thus, when performing a legal
sufficiency review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the factfinder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

ii.      Legally
Sufficient Evidence








Viewing the evidence in the light most favorable
to the verdict, the record demonstrates that there was legally sufficient
evidence that Lugo murdered Delgadillo. 
The police found Delgadillo, murdered, in Lugo=s motel
room.  There was evidence that Lugo
occupied the motel room because his personal items, paperwork, and DNA were
found there.  Lugo admitted to Reyes that
he was in the room when Delgadillo was murdered.  There was testimony that Lugo and Delgadillo
fought over a .38 revolver moments before Delgadillo was killed.  The lead witness testified that she had seen
Lugo carry a .38 revolver in the past. 
The bullet that killed Delgadillo was a .38 caliber bullet.  Sanchez saw Delgadillo on his knees
immediately before she heard a gunshot. 
After she heard the gunshot, Sanchez testified that she saw Lugo
pointing a gun at Delgadillo and Delgadillo falling forward.  Police found Delgadillo face down with a
fatal gunshot wound to his back.  There
was also testimony by the medical examiner that Delgadillo died of a
contact-range gunshot wound and that Delgadillo=s knees
had bruising and scraping consistent with a scenario where Delgadillo was
kneeling when he was shot.

Viewing the evidence in the light most favorable
to the jury=s verdict, we hold that a
rational trier of fact could have found that the evidence at trial was
sufficient to establish the elements of murder beyond a reasonable doubt.  See Jackson, 443 U.S. at 326, 99 S.
Ct. at 2793; Clayton, 235 S.W.3d at 778; see also Tex. Penal Code
Ann. ' 19.02(b)(1)B(2)
(providing elements of murder). 
Accordingly, we hold that the evidence is legally sufficient to support
Lugo=s
conviction.  We overrule Lugo=s fourth
issue.

iii.     Factual
Sufficiency Review








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Neal v.
State, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), cert. denied, 129
S. Ct. 1037 (2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s determination is manifestly
unjust.  Lancon v. State, 253
S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson, 204 S.W.3d at 414B15, 417.  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the factfinder=s.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  Unless the record clearly
reveals that a different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, unless we conclude that it is necessary
to correct manifest injustice, we must give due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Id. at 9.  Our deference in this regard safeguards the
defendant=s right to a trial by jury.  Lancon, 253 S.W.3d at 704.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

iv.     Factually
Sufficient Evidence

Even though Lugo raises a factual sufficiency of
the evidence complaint in his third issue, we agree with the State that Lugo=s
factual sufficiency issue is Asimply
an attack on the credibility of a witness. A  Specifically, Lugo attacks the credibility of
Sanchez, the State=s key witness and the only
eyewitness to Delgadillo=s murder to testify at trial, by
pointing out that she admitted that she had not been completely truthful to
police during their initial investigation and that her testimony regarding where
Delgadillo=s body fell toward the floor in
relationship to Lugo was inconsistent with the medical examiner=s
testimony concerning the proximity of the weapon that killed Delgadillo when it
was fired.  Lugo contends that when Aher
testimony is reviewed as a whole, she is totally unbelievable.@








Even if Sanchez=s
testimony was inconsistent, it was within the jury=s
purview to determine the credibility of her testimony, and the jury was also
free to believe her trial testimony over her statement made to the police
during their investigation.  See
Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); Sharp v.
State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986), cert. denied, 488
U.S. 872 (1988); see also Fuentes v. State, 991 S.W.2d 267, 271 (Tex.
Crim. App.), cert. denied, 528 U.S. 1026 (1999) (noting that
inconsistency goes to the credibility of the witnesses and the jury is the sole
judge of that issue).  Further, the jury
was free to disregard any or all of her testimony, including whether to believe
her account of where Delgadillo=s body
fell after he was shot.  See Walker
v. State, 180 S.W.3d 829, 831B32 (Tex.
App.CHouston
[14th Dist.] 2005, pet. ref=d)
(holding evidence legally and factually sufficient to convict for robbery even
though sole eyewitness=s testimony that robbery lasted
nearly two minutes was inconsistent with security tapes indicating that robbery
lasted less than one minute); see also Bowden v. State, 628 S.W.2d 782,
784 (Tex. Crim. App. 1982) (AReconciliation
of conflicts and contradictions in the evidence is within the province of the
jury.@).  We also do not find any infirmity that
Sanchez was the only eyewitness to the murder to testify.  See Bowden, 628 S.W.2d at 784.








We have reviewed the evidence in a neutral light,
and we find no objective basis in the record for holding that the jury=s
verdict was clearly wrong or manifestly unjust or that it was contradicted by
the great weight and preponderance of the evidence.  See Lancon, 253 S.W.3d at 704; Watson,
204 S.W.3d at 414B15, 417.  Rather, the evidence presented at trial was
sufficient to support the verdict, and no contrary evidence exists that would
render the evidence factually insufficient under the applicable standard of
review.  See Lancon, 253 S.W.3d at
704; Watson, 204 S.W.3d at 414B15,
417.  Accordingly, we hold that the
evidence is factually sufficient to support Lugo=s
conviction.  We overrule Lugo=s third
issue.

VI.  Punishment Range Enhancement

In his fifth issue, Lugo argues that the trial
court erred by overruling his objection to the punishment charge because Athere is
no showing that one of the habitual offender convictions is a felony.@  Specifically, Lugo argues that it is not
clear Afrom the
judgment@ whether
his previous conviction for driving while intoxicated (ADWI@) was a
felony or a misdemeanor.  The State counters
that Lugo waived this objection because he did not object to the indictmentCproviding
Lugo with notice that the State was seeking to enhance the range of punishmentCprior to
trial.  The State further argues that,
even if Lugo=s issue is preserved, the Ajudgment
plainly reflects that [Lugo] was convicted of the felony offense of felony
driving while intoxicated.@  This court rejects the State=s
argument that Lugo has waived this potential point of error, but we agree with
the State that sufficient evidence exists that the conviction in the
enhancement paragraph Lugo complains of was a felony for purposes of enhancing
the sentence range for his conviction of murder.








The State=s
inclusion of the enhancement paragraphs served to substantially increase Lugo=s range
of punishment.  A person with no felony
enhancements who is convicted of murderCa first
degree felonyCfaces a prison sentence Afor life
or for any term of not more than 99 years or less than 5 years.@  See Tex. Penal Code Ann. '' 
12.32(a), 19.02 (Vernon 2003).  But the
minimum prison term a defendant may receive increases to fifteen years when one
felony enhancement is found to be true.  See
id. ' 12.42(c)(1)
(Vernon Supp. 2008).  And when two felony
enhancements are found to be true, as is the case here, a defendant found
guilty of murder may be assessed no fewer than twenty-five years=
confinement.  Id. ' 12.42(d).








First, addressing the State=s
argument that Lugo failed to preserve this error for review:  This court acknowledges that the cases cited
by the State do stand for the proposition that failure by a defendant to object
to a potentially defective enhancement paragraph included in an indictment
prior to trial prohibits the defendant from raising any alleged error on
appeal.  See Goins v. State, 841
S.W.2d 527, 532B33 (Tex. App.CHouston
[1st Dist] 1992, pet. ref=d) (overruling challenge to
enhancement paragraph contained in indictment for failure to object prior to
trial); see also Shaw v. State, 794 S.W.2d 544, 544B45 (Tex.
App.CDallas
1990, no pet.) (overruling challenge to enhancement paragraph in indictment
where objection made after jury returned a verdict of guilty but prior to
punishment).  The holdings in this line
of cases are predicated on the language found in Texas Code of Criminal
Procedure article 1.14(b), AIf the
defendant does not object to a defect, error, or irregularity of form or
substance in an indictment . . . [before trial], . . . he may not raise the
objection on appeal.@ 
Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon 2005).  Article 1.14(b) is designed to prevent a
defendant from lying Abehind the log@ and
attacking an otherwise constitutionally valid indictment for the first time on
appealCit does
not relieve the State of its burden to prove that a defendant is a habitual
offender.  Compare Teal v. State,
230 S.W.3d 172, 175B78 (Tex. Crim. App. 2007)
(discussing legislative-reform package designed to prevent conviction reversals
based on the Afine technical distinctions
between defects of form and those of substance@) with
Jordan v. State, 256 S.W.3d 286, 291B92 (Tex.
Crim. App. 2008) (holding that State=s burden
under habitual offender statute is an issue of sufficiency of evidence and
cannot be categorized as trial error).








Indeed, the court of criminal appeals has said, AA claim
regarding sufficiency of the evidence need not be preserved for review at the
trial level and is not waived by the failure to do so.@  Rankin v. State, 46 S.W.3d 899, 901
(Tex. Crim. App. 2001).  The court of
criminal appeals has also Aconsistently
held that where there is no evidence to show that the offenses were
committed and became final in the proper sequence, the defendant=s
sentence may not be enhanced under the State=s
habitual offender statutes.@  Tomlin v. State, 722 S.W.2d 702, 705
(Tex. Crim. App. 1987).  Our review of
Lugo=s brief
indicates that he is challenging the sufficiency of the evidence to support one
of the indictment=s enhancement paragraphs, not
the paragraph itself.  Thus, he can raise
this issue on appeal even though he did not object to the paragraph until after
the jury returned a verdict of guilty.  See
Tomlin, 722 S.W.2d at 705.  Therefore,
we now address the State=s argument that sufficient
evidence exists that Lugo=s prior conviction for DWI was a
felony and was sufficient to satisfy the habitual offender statute.

Before the State may use enhancement paragraphs
to increase a defendant=s range of punishment, it must
prove that they are true beyond a reasonable doubt.  See Williams v. State, 980 S.W.2d 222,
226 (Tex. App.CHouston [14th Dist.] 1998, pet.
ref=d).  When the State seeks to punish a defendant as
a habitual offender, and thus includes two felony enhancement paragraphs in the
indictment, the State must show that the defendant committed each successive
felony after the prior conviction was final. 
See Tex. Pen. Code Ann. ' 12.42(d).  Here, the enhancement paragraphs read:

Habitual offender
notice:  And it is further presented to
said court that prior to the commission of the offense or offenses set out
above, [Lugo] was finally convicted of the felony offense of possession with
intent to deliver a controlled substance . . . in cause number 0573866D,
on the 28th day of August, 1995, and, that prior to the commission [of
0573866D, Lugo] was finally convicted of the felony offense of driving while
intoxicated and felony repetition . . . in cause number 0484031D, on
the 10th day of May, 1993.

 








Thus, for the State to show that Lugo was subject
to punishment as a two-time habitual offender, it was required to show beyond a
reasonable doubt that before commission of the primary offenseCmurderCLugo had
been finally convicted of felonies in cause numbers 0573866D and
0484031D and that they were committed in the proper sequence.  See id.; Casey v. State, 708
S.W.2d 914, 916 (Tex. App.CHouston
[1st Dist.] 1986, pet. ref=d).

There are several ways that the State may prove
that a conviction is final and is true beyond a reasonable doubt.  For instance, generally a defendant=s plea
of true to an enhancement paragraph provides sufficient evidence to find the
paragraph true beyond a reasonable doubt. 
See Wilson v. State, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984); see
also Magic v. State, 217 S.W.3d 66, 70 (Tex. App.CHouston
[1st Dist.] 2006, no pet.).  A defendant
who has pleaded true to an enhancement paragraph can still contend, however,
that the evidence is insufficient to support proof of the paragraph beyond a
reasonable doubt, but only when Athe
record affirmatively reflect[s] that the prior conviction should not have been
used for enhancement purposes.@  Mikel v. State, 167 S.W.3d 556, 559B60 (Tex.
App.CHouston
[14th Dist.] 2005, no pet.) (quoting Cruz v. State, No. 01‑00‑00463‑CR,
2001 WL 1168273, at *1 (Tex. App.CHouston
[1st Dist.] Oct. 4, 2001, no pet.) (not designated for publication)); see
also Ex parte Rich, 194 S.W.3d 508, 513B14 (Tex.
Crim. App. 2006).








Here, prior to punishment being assessed, Lugo
objected to the use of his conviction for felony DWI in cause number 0484031D
for enhancement purposes because the pen packet reflected he was assessed
punishment falling within the range of punishment consistent with both a
misdemeanor or a felony.  Nonetheless,
Lugo pleaded true to both enhancement paragraphs.  Thus, Lugo must now show that the record
affirmatively reflects that his prior conviction for DWI should not have been
used for enhancement purposes.  See
Ex Parte Rich, 194 S.W.3d at 513B14.  In other words, he must show that the record
affirmatively establishes that his conviction for DWI was not a felony.  Id.

The pen packet for cause number 0484031D
describes the convicted offense as ADriving
while intoxicated and felony repetition.@  The pen packet further describes that Lugo
pleaded guilty to DWI as part of a plea bargain, and that the punishment
assessed was for six months=
incarceration in the Tarrant County Jail and a $500 fine (a punishment within
the range for either a misdemeanor or a felony under the DWI law that existed
when Lugo pleaded guilty.)  Act of May
27, 1983, 68th Leg., R.S., ch. 303, ' 3, 1983
Tex. Gen. Laws 1568, 1574B77, repealed by Act of
May 19, 1993, 73rd Leg., R.S., ch. 900, ' 1.15,
1993 Tex. Gen. Laws 3586, 3704 (codified as amended at Tex. Penal Code Ann. ' 49.09
(Vernon Supp. 2008)).  Furthermore, Lugo=s
defense counsel explained to the jury that Lugo had been convicted of Afelony
DWI and . . . on two previous occasions [Lugo] was convicted of
misdemeanor DWI.@








Considering that Lugo pleaded true to the
enhancement paragraph predicated on cause number 0484031D; that there was
evidence in the pen packet that the conviction was for Afelony
repetition@; that Lugo admitted he had been
convicted of felony DWI; and that the punishment assessed for cause number
0484031D was within the range of punishment for a felony, we hold that Lugo has
failed to demonstrate that Athe
record affirmatively reflect[s] that the prior conviction= should
not have been used for enhancement purposes.@   See
Mikel, 167 S.W.3d at 559B60.  We overrule Lugo=s fifth
issue.

VII.  Conclusion

Having overruled each of Lugo=s five
issues, we affirm the trial court=s
judgment.

BILL
MEIER

JUSTICE

 

PANEL: 
CAYCE, C.J.; DAUPHINOT and MEIER, JJ.

 

PUBLISH

 

DELIVERED: 
October 1, 2009